USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

EARL INGARFIELD,

                        Defendant.

No. 20-CR-00146 (RA)

MEMORANDUM
OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

      Defendant Earl Ingarfield is charged with one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2. Ingarfield moves to dismiss both counts of the indictment as time-barred, or alternatively, for a bill of particulars naming unindicted co-conspirators. For the reasons that follow, Ingarfield's motion is denied.

## BACKGROUND

      As alleged in the indictment,[1] from around 2013 to at least around March 2014, Ingarfield controlled a purported mining company called Suburban Minerals Corp. ("SUBB") and engaged in a scheme to manipulate SUBB's stock price. Together with unnamed co-conspirators, Ingarfield allegedly directed the issuance of press releases and stock promotions that described SUBB's efforts in acquiring a diamond mine in the Central African Republic when no such efforts were being made. According to the indictment, he further hid his controlling stake in SUBB through the acquisition of various international shell companies and the filing of public

---

[1] "On a motion to dismiss an indictment, the court must examine the indictment as a whole, accept as true the facts alleged, and determine only whether the indictment is valid on its face." *United States v. Fitts*, No. 19 Cr. 341 (RA), 2019 WL 3409866, at *1 n.1 (S.D.N.Y. July 29, 2019) (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)).

disclosure statements that misrepresented SUBB's ownership. Ingarfield and his co-conspirators then purportedly sold significant shares of SUBB, and wired the proceeds to accounts that were nominally held by shell companies, but actually controlled by Ingarfield. Ingarfield was indicted for securities fraud and conspiracy to commit securities fraud on February 20, 2020.

## DISCUSSION

### A. Statute of Limitations

Ingarfield argues that the conspiracy count is time-barred because the indictment fails to allege any overt act occurring within the statute of limitations. To the extent that the government intends to rely on unalleged overt acts to satisfy the statute of limitations, he urges, such evidence would constitute a constructive amendment or improper variance of the indictment. Ingarfield also contends that the substantive count is time-barred because the indictment does not describe how he engaged in the alleged scheme during the limitations period. The Court disagrees.

#### 1. Legal Standard

Under the Federal Rules of Criminal Procedure, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted). To meet this standard, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (internal quotation marks omitted).

"In some circumstances . . . a party may raise and establish a statute-of-limitations defense via a Rule 12(b) motion, such as when the defense is clear from the face of the indictment." *United States v. Sampson*, 898 F.3d 270, 279 (2d Cir. 2018). For conspiracy charges, "the government satisfies the statute of limitations if it establishes that the conspiracy operated within the [limitations] period preceding the indictment, and a conspirator knowingly committed at least one overt act in furtherance of the scheme within that period." *United States v. Salmonese*, 352 F.3d 608, 614 (2d Cir. 2003) (internal citation omitted). "[T]he statute of limitations may be satisfied by proof of an overt act *not* explicitly listed in the indictment, as long as a defendant has had fair and adequate notice of the charge for which he is being tried, and he is not unduly prejudiced by the asserted variance in the proof." *Id.* (emphasis added) (quoting *United States v. Frank*, 156 F.3d 332, 339 (2d Cir. 1998)).

In other words, the government may rely on an unalleged overt act to satisfy the statute of limitations if it avoids two pitfalls: a constructive amendment or an improper variance. "A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted." *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018). But as long as the defendant receives "notice of the core of criminality to be proven at trial," the government has "'significant flexibility' to prove the conspiracy's operation through both unalleged and alleged overt acts," and a constructive amendment claim will likely fail. *Salmonese*, 352 F.3d at 619 (quoting *Frank*, 156 F.3d at 338); *see id.* at 621. "A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Salmonese*, 352 F.3d at 621 (quoting *Frank*, 156 F.3d at 337 n.5). A constructive amendment is considered a per se violation of the Fifth Amendment's Grand Jury Clause, whereas for an

3

improper variance claim, the defendant must show "substantial prejudice" in order to prevail. *United States v. Geibel*, 369 F.3d 682, 693 (2d Cir. 2004).

### 2. Application

The applicable statute of limitations for both securities fraud and conspiracy to commit securities fraud is six years. 18 U.S.C. § 3301(b). The indictment was returned on February 20, 2020, which means the limitations period began on February 20, 2014.

As to the conspiracy count, Ingarfield is correct that the indictment only alleges overt acts occurring between May 11, 2013 and February 14, 2014, which falls short of the limitations period. As explained above, however, an indictment need not allege overt acts within the limitations period to be timely. *Salmonese*, 352 F.3d at 614 (quoting *Frank*, 156 F.3d at 339). Ingarfield's indictment more broadly alleges a conspiracy lasting "[f]rom at least in or about 2013 through at least in or about March 2014," Indictment ¶ 1, which adequately "state[s] the time . . . (in approximate terms) of the alleged crime," *Stavroulakis*, 952 F.2d at 693, and extends into the limitations period. Thus, the Court cannot conclude that the indictment violates the statute of limitations on its face. *See Sampson*, 898 F.3d at 279 (concluding that a statute-of-limitations defense is "premature" at the motion-to-dismiss stage "when the indictment [is] sufficient on its face and the government had not proffered all its evidence").

Nor does the government's anticipated evidence of unalleged overt acts amount to a constructive amendment or improper variance. That evidence, which the government has now conveyed to Ingarfield, Gov't Mot. 7, is nearly identical in substance to the overt acts that are alleged in the indictment. *See* Gov't Mot. 14 (press releases issued on February 25, 2014 and March 5, 2014 relating to the false acquisition of the diamond mine; misleading public disclosures issued on March 5, 2014 about SUBB's ownership structure; wiring of proceeds from

SUBB's stock sales on March 21, 2014). Furthermore, the indictment gives Ingarfield sufficient notice of the "core of criminality to be proven at trial," i.e., his scheme to artificially inflate SUBB's stock price, hide his controlling stake in the company, and profit from the sales of shares. *See United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021) ("The core of criminality of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." (internal quotation marks omitted)). There is no indication that the government's anticipated evidence, as currently described, would constitute a constructive amendment or improper variance, and thus no grounds for dismissing the conspiracy count at this stage. And to the extent that Ingarfield contends that the government's evidence is "vague" or "unclear," Def. Mot. 8, that is a question for the jury to decide, not a question for the Court to resolve before trial. *See Sampson*, 898 F.3d at 281 ("[A]uthorizing district court judges to resolve dispositive fact-based evidentiary disputes on Rule 12(b) motions risks invading the inviolable function of the jury in our criminal justice system." (internal quotation marks omitted)).

As for the substantive count, Ingarfield argues that "there is no indication in the Indictment as to how Mr. Ingarfield allegedly caused fraudulent misrepresentations and material omissions to be made in press releases and public disclosure documents, including after February 20, 2014." Def. Mot. 9. But again, the indictment's allegation that the purported scheme occurred "[f]rom at least in or about 2013 through at least in or about March 2014" is sufficient, because the indictment "state[s] the time and place (in approximate terms) of the alleged crime," *Stavroulakis*, 952 F.2d at 693, and gives notice of the "core of criminality to be proven at trial," *Salmonese*, 352 F.3d at 619 (quoting *Frank*, 156 F.3d at 338). The indictment does not need to describe all the particulars of Ingarfield's alleged scheme in order to satisfy the statute of

limitations on the substantive count, *see Khalupsky*, 5 F.4th at 293, and his motion to dismiss that count as untimely is thus denied.

### B. Bill of Particulars

In a footnote to his motion, Ingarfield appears to request, in the alternative, a bill of particulars identifying his unindicted co-conspirators. Def. Mot. 8 n.5. "Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). In deciding such a motion, "[t]he crucial question is whether the information sought is *necessary*, not whether it is *helpful*" to the preparation of the defense. *United States v. Love*, 859 F. Supp. 725, 738 (S.D.N.Y. 1994) (emphasis in original). Relevant factors include "the number of co-conspirators," "the duration and breadth of the alleged conspiracy," "the volume of pretrial discovery," and "whether the Government otherwise has provided adequate notice of the particulars." *United States v.* Lino, No. 00 CR. 632 (WHP), 2001 WL 8356, at *12 (S.D.N.Y. Jan. 2, 2001) (citing *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000)); *see, e.g.*, *United States v. Bin Laden*, 92 F. Supp. 2d 225, 241 (S.D.N.Y. 2000) (noting that, with a "long-running" conspiracy of nearly ten years, at least 20 co-conspirators, and "extremely voluminous" discovery, a bill of particulars listing unindicted co-conspirators "might . . . be necessary to prevent prejudicial surprise at trial").

None of those factors make a bill of particulars necessary here. The alleged conspiracy is cabined to one year, from 2013 to around March 2014. The overt acts alleged in the indictment only involve one unnamed co-conspirator, "CC-1," and another individual not named as a

defendant, "Individual-1." Indictment ¶ 3. The allegations refer to two emails that CC-1 sent or received on specific dates, and a single meeting that Individual-1 attended on a specific date, so it should not be especially difficult for Ingarfield to identify those events (and similar events) in preparation for trial. *Id*. Lastly, there is no indication that discovery has been so voluminous as to raise a risk of prejudicial surprise at trial, and in any event, the government's subsequent disclosure to Ingarfield regarding its anticipated evidence of unalleged overt acts further weighs against granting a bill of particulars. *See United States v. Gammarano*, No. CR-06-0072 (CPS), 2007 WL 2077735, at *10 (E.D.N.Y. July 18, 2007) (citing *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)) ("[E]ven in cases where deficiencies in the indictment . . . might appear to call for a bill of particulars, those deficiencies can be cured by subsequent disclosures of the government[.]"). The only reason Ingarfield offers in support of his request is "to permit the defense to identify and investigate potentially relevant witnesses," Def. Mot. 8 n.5, but he does not explain why a bill of particulars would be necessary, and not just helpful, for the preparation of his defense. *See United States v. Roberts*, No. 01 CR 410 (RWS), 2001 WL 1646732, at *12 (S.D.N.Y. Dec. 17, 2001) ("[T]he Government is not required to provide information that would, in effect, provide the defendant before trial with a preview of the Government's case, lest the defendant tailor his own testimony to explain away the Government's case." (internal citation omitted)).

## CONCLUSION

Accordingly, Ingarfield's motion to dismiss the indictment and request for a bill of particulars is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 39.

SO ORDERED.

Dated:   November 3, 2022
          New York, New York

                                              Hon. Ronnie Abrams
                                              United States District Judge